1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

                          ----oo0oo----

11

12   PATRICIA WALKER, individually;
     PATRICIA WALKER, as Guardian
13   Ad Litem for LINDSAY WALKER
     and ASHLEY WALKER minors; and
14   PATRICIA WALKER, as Successor-
     In-Interest to FREDERICK
15   WALKER II, JANELLE WALKER,
                                          NO. CIV. S-03-1152 FCD DAD
16          Plaintiffs,

17      v.                                MEMORANDUM AND ORDER

18   FMC TECHNOLOGIES, FMC
     FoodTech, FRIGOSCANDIA, and
19   DOES 1 through 50, inclusive,

20          Defendants.

21                        ----oo0oo----

22        This matter is before the court on motion by defendants, FMC

23   Technologies, Inc. ("FMC"), FMC Foodtech, and Frigoscandia

24   (sometimes collectively "defendants"), pursuant to Federal Rule

25   of Civil Procedure 12(c) and/or 56, seeking summary adjudication

26   of whether California's or Wisconsin's rules of decision for

27   measuring damages in wrongful death suits apply in this case.

28

1  For the reasons stated below, defendants' motion is DENIED.[1]

2  **BACKGROUND**

3       Plaintiffs, residents of California, brought this wrongful

4  death suit in the Superior Court of California for the County of

5  Sacramento; defendants subsequently removed the case to this

6  court based on diversity of citizenship jurisdiction.  (FMC's

7  Mem. of P. & A., filed March 3, 2005, at 2.)  Plaintiffs include

8  decedent's widow, Patricia Walker, decedent's two minor children,

9  and decedent's adult child, Janelle Walker.  (Pls.' Opp'n, filed

10 March 29, 2005, at 2.)  Defendant FMC is a Delaware corporation

11 with its principal place of business in Chicago, Illinois.  (Id.)

12      Plaintiffs' decedent, Frederick Walker, II, was employed by

13 KVP Plastics located in Rancho Cordova, CA.  (Pls.' Opp'n at 2-

14 3.)  KVP Plastics manufactures conveyor belts for the food-

15 processing industry.  (Pls.' Resp. to Defs.' Statement of

16 Undisputed Facts ["Pls.' Resp."], filed March 29, 2005, at 2.)

17 Defendant FMC manufactures industrial freezers and other

18 equipment for the food-processing industry.  (Pls.' Resp. at 3.)

19 FMC sold industrial freezers to Kraft Foods for use at Kraft's

20 Tombstone Pizza Facility in Medford, Wisconsin.  (Pls.' Resp. at

21 3.)  Kraft obtained the industrial freezer as a result of a

22 direct purchase pursuant to a "design build agreement" by which

23 Kraft contracted with FMC for a custom freezer to meet its

24 specific operating requirements.  (FMC'S Reply, filed April 8,

25 2005, at 3.)  KVP Plastics instructed plaintiff's decedent and

26

27      [1]  Because oral argument will not be of material
   assistance, the court orders the matter submitted on the briefs.
28 See E.D. Cal. L.R. 78-230(h).

1 │ others to travel to Wisconsin to perform certain modifications to

2 │ the conveyor belts on the FMC industrial freezers located at

3 │ Kraft's Tombstone Pizza Facility.  (Pls.' Opp'n at 4.)

4 │     The incident which provides the basis of this suit occurred

5 │ on September 23, 2001 in the Kraft-Tombstone facility in Medford,

6 │ Wisconsin.  (Pls.' Resp. at 2.)  Plaintiffs' decedent was in the

7 │ course and scope of his employment when he was injured while

8 │ trying to reinstall a conveyor belt on an FMC freezor at the

9 │ facility.  (Pls.' Resp. at 2.)  Ultimately, Mr. Walker was

10 │ crushed between one of the freezor's rotating spokes and a fix

11 │ beam.  (Pls.' Add'l Disputed Facts, filed March 29, 2005, at 4.)

12 │ He died four days later on September 27, 2001.  (Id. at 5.)

13 │ **STANDARD**[2]

14 │     Rule 56 allows a court to grant summary adjudication on part

15 │ of a claim or defense.  See Fed. R. Civ. P. 56(a) ("A party

16 │ seeking to recover upon a claim . . . may . . . move . . . for a

17 │ summary judgment in the party's favor upon all or any part

18 │ thereof."); see also Allstate Ins. Co. v. Madan, 889 F.Supp. 374,

19 │ 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter

20 │ Township of Monroe, 790 F.Supp. 707, 710 (E.D. Mich. 1992).

21 │     The standard that applies to a motion for summary

22 │ adjudication is the same as that which applies to a motion for

23 │ summary judgment.  See Fed. R. Civ. P. 56(a), (c); Mora v.

24 │ ChemTronics, 16 F.Supp.2d 1192, 1200 (S.D. Cal. 1998).  Thus,

25 │ summary adjudication is appropriate when the moving party

26 │ demonstrates that there exists no genuine issue as to any

27 │

28 │ [2]   The court construes defendants' motion as motion for
summary adjudication under Federal Rule of Civil Procedure 56(a).

1  material fact, entitling it to a ruling in its favor as a matter

2  of law.  See Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co.,

3  398 U.S. 144, 157 (1970).  The moving party "always bears the

4  initial responsibility of informing the district court of the

5  basis for its motion, and identifying those portions of 'the

6  pleadings, depositions, answers to interrogatories, and

7  admissions on file, together with the affidavits, if any,' which

8  it believes demonstrate the absence of a genuine issue of

9  material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323

10  (1986).

11       If the moving party meets its initial responsibility, the

12  burden then shifts to the opposing party to establish that a

13  genuine issue as to any material fact actually does exist.

14  Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp., 475

15  U.S. 574, 585-87 (1986); First Nat'l Bank of Ariz. v. Cities

16  Serv. Co., 391 U.S. 253, 288-289 (1968).

17       In resolving the summary judgment motion, the court examines

18  the pleadings, depositions, answers to interrogatories, and

19  admissions on file, together with the affidavits, if any.  See

20  Fed. R. Civ. P. 56(c); SEC v. Seaboard Corp., 677 F.2d 1301,

21  1305-06 (9th Cir. 1982).  The evidence of the opposing party is

22  to be believed, and all reasonable inferences that may be drawn

23  from the facts placed before the court must be drawn in favor of

24  the opposing party.  Anderson v. Liberty Lobby, Inc., 477 U.S.

25  242, 255 (1986) (citing Adickes, 398 U.S. at 158-59).

26  Nevertheless, inferences are not drawn out of the air, and it is

27  the opposing party's obligation to produce a factual predicate

28  from which the inference may be drawn.  Richards v. Nielsen

1  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

2  aff'd, 810 F.2d 898 (9th Cir. 1987).

3                              **ANALYSIS**

4       Federal courts sitting in diversity apply the choice of law

5  principles of the state in which they sit.  Klaxon Co. v. Stentor

6  Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  The parties agree that

7  the material facts regarding this motion are not in dispute.  The

8  sole issue is a question of law as to what State's measure of

9  damages law should be applied.  Thus, this court looks to

10 California choice of law rules.

11      **A.   California Choice of Law Rules**

12      Absent an enforceable choice of law provision, California

13 follows a "governmental interests" approach to resolve conflict

14 of law issues.  In re Yagman, 796 F.2d 1165, 1170 (9th Cir.

15 1986); Reich v. Purcell, 67 Cal. 2d 551, 554 (1967).  The

16 governmental interests analysis "embodies the presumption that

17 California law applies unless the proponent of foreign law can

18 show otherwise."  Marsh v. Burrell, 805 F. Supp. 1493, 1496 (N.D.

19 Cal. 1992).  When a litigant invokes foreign law, he or she must

20 "demonstrate that the [foreign] rule of decision will further the

21 interest of the foreign state and therefore that it is an

22 appropriate one for the forum to apply . . .."  Hurtado v.

23 Superior Court, 11 Cal. 3d 574, 581 (1974).  The burden of

24 proving that a foreign jurisdiction's law applies is on the party

25 invoking the foreign rule of decision.  McGhee v. Arabian

26 American Oil Co., 871 F.2d 1412, 1422 (9th Cir. 1989).

27 California's governmental interests analysis follows a three-step

28 process.  Liew v. Official Receiver and Liquidator, 685 F.2d

                                    5

1  1192, 1196 (9th Cir. 1982).

2      First, the court must determine whether the substantive laws

3  of California and the foreign jurisdiction differ on the issue

4  before it.  Id.

5      Second, if the court determines that a difference exists

6  between the two laws, then the court must determine what

7  interests the competing jurisdictions have in the application of

8  their respective laws.  Id.; Hurtado, 11 Cal. 3d at 581.  If only

9  one of the jurisdictions has an interest in having its law

10  applied, then there is a "false conflict" between the laws.

11  Liew, 685 F.2d at 1196; Hurtado, 11 Cal. 3d at 580.  "Only if

12  each of the states involved has a 'legitimate but conflicting

13  interest in applying its own law' will we be confronted with a

14  'true' conflicts case."  Offshore Rental Co. v. Continental Oil

15  Co., 22 Cal. 3d 157, 163 (1978) (citations omitted).  As the

16  forum, a California court will conclude that a conflict is

17  "false" and apply its own law unless the application of the

18  foreign law will "*significantly* advance the interests of the

19  foreign state."  Strassberg v. New England Mut. Life Ins. Co.,

20  575 F.2d 1262, 1264 (9th Cir. 1978) (emphasis added).

21      Lastly, if the court determines that both jurisdictions have

22  a policy interest in the application of their laws, then the

23  court proceeds to the third step known as the "comparative

24  impairment" test.  Liew, 685 F.2d at 1196.  During this step, the

25  court must determine which jurisdiction's interests would be most

26  impaired if its policies were subordinated to those of the other

27  jurisdiction.  Id.; Offshore Rental Co, 22 Cal. 3d at 161.

28

1           **B.    Application of California Choice of Law Rules**

2           The first step in California's conflict of laws analysis is

3    to determine whether the substantive laws of the relevant

4    jurisdictions differ.   Two states are implicated in this case:

5    (1) California - the place of plaintiffs' domicile and residence,

6    the place of decedent's employment, and the place of the forum;

7    and (2) Wisconsin - the place of the alleged wrongful death.   As

8    discussed below, the rules of decision for measuring damages in

9    wrongful death actions in these two jurisdictions differ

10   markedly.

11          Specifically, there are three material differences between

12   California's and Wisconsin's rules of decision for measuring

13   damages in wrongful death actions.   First, California law allows

14   recovery without limitation for all damages proximately caused by

15   a tort.   CAL. CIV. CODE § 3333.   Under the law of Wisconsin, a

16   plaintiff may recover no more than $350,000 in non-economic

17   damages.   WIS. STATS. § 895.04(4).   Consequently, a finding that

18   Wisconsin law applies would lead to a cap on the non-economic

19   damages that plaintiffs may seek against defendants.   Second,

20   under California law "a plaintiff's contributory negligence does

21   not bar his recovery but merely diminishes proportionately the

22   amount of damages he may recover against others who contributed

23   to his injury."   <u>Southern Pacific Transportation Co. v. State of</u>

24   <u>California</u>, 115 Cal. App. 3d 116, 119-120 (1981).   In Wisconsin,

25   recovery for negligence is barred if the plaintiff's negligence

26   is greater than that of the person against whom he seeks

27   recovery.   WIS. STATS. § 895.045.   Lastly, California law allows

28   "[a] cause of action for the death of a person caused by the

                                    7

wrongful act or neglect of another [to] be asserted by" the
surviving spouse, domestic partner, children, or heir by
intestate succession.   CAL. CODE CIV. PROC. § 377.60.   Wisconsin
law allows the personal representative of the deceased or the
person to whom the amount recovered belongs to bring an action
for wrongful death.   WIS. STATS. § 895.04(1).   Accordingly, a
finding that Wisconsin law applies in this case would demand that
plaintiffs Janelle Walker and decedent's minor children be barred
from bringing this action.   It is clear that California and
Wisconsin have markedly different laws with regards to wrongful
death suits.

The second step under California's choice of law analysis is
to determine whether Wisconsin has any policy interest that may
justify applying its damages law instead of California law in
this action.   Defendants offer two main reasons to apply
Wisconsin law: 1) Wisconsin is the place of the alleged wrongful
death, and 2) Wisconsin has an interest in regulating and
deterring wrongful conduct within its borders.[3]   Defendants'
emphasis on Wisconsin's interest in regulating and deterring
conduct is misplaced because "[l]imitations of damages for

---

[3]      In their Reply, defendants offer nine specific reasons
to apply Wisconsin law including: 1) the accident occurred in
Wisconsin; 2) the contract for the industrial freezer arose in
Wisconsin; 3) Wisconsin was the location of the job site; 4) the
industrial freezer made the subject of this litigation is located
in Wisconsin; 5) the facility is under the control of Kraft in
Wisconsin; 6) Wisconsin OSHA regulates conduct in Wisconsin; 7)
plaintiffs' cause of action for negligence is based upon the
alleged conduct by FMC in Wisconsin; 8) plaintiff seeks punitive
damages which are to deter conduct; and 9) Wisconsin has an
interest in deterring wrongful conduct that takes place within
its borders.   (FMC'S Reply at 10:17-25.)   The court will not
address each of these arguments individually as they all center
on deterring/regulating conduct.

1    wrongful death . . . have little or nothing to do with conduct.

2    They are concerned not with how people should behave but with how

3    survivors should be compensated."  Reich, 67 Cal. 2d at 556.

4    Unlike Wisconsin, California has a policy interest in determining

5    how plaintiffs should be compensated because plaintiffs are

6    residents of California.  Moreover, "a jurisdiction's only

7    interest in having its damages limitation rules applied is to

8    protect its resident defendants from excessive financial burdens

9    or from exaggerated claims."  Marsh, 805 F. Supp. at 1498

10   (citations omitted).  In this case, none of the defendants are

11   residents of Wisconsin.  Thus, Wisconsin does not have a policy

12   interest in the application of Wisconsin's rules of decision

13   limiting damages in this wrongful death suit.

14       As discussed earlier, a California court will apply its own

15   law unless the application of the foreign law will significantly

16   advance the interests of the foreign state.  The court finds that

17   defendants have failed to meet their burden to demonstrate that

18   application of Wisconsin law will further the interests of the

19   foreign state and, as such, the alleged conflict between

20   Wisconsin and California law is a "false" conflict.  The court

21   therefore need not reach the third, "comparative impairment,"

22   step of California's choice of law analysis because only

23   California has an interest in having its damages law applied in

24   this action.  See Marsh, 805 F. Supp. at 1502 (stating when a

25   court finds a "false" conflict the "comparative impairment" step

26   is unnecessary); Nelson v. International Paint Co., 716 F.2d 640,

27   644 (9th Cir. 1983) (same); Schlumberger Logelco Inc. v. Morgan

28   Equipment Co., 1996 WL 251951 (N.D. Cal.) (same).

9

1      **C.    Impact of Application of California Law to This Case**

2      The court finds that California law applies in this case

3 such that there will be no cap on non-economic damages as sought

4 by plaintiffs and decedent's children may proceed as plaintiffs

5 in this wrongful death action.

6                                **CONCLUSION**

7      For the foregoing reasons, defendants' motion for summary

8 adjudication is DENIED.

9      IT IS SO ORDERED.

10 DATED: April 18, 2005.

11                            /s/ Frank C. Damrell, Jr.
                                   FRANK C. DAMRELL, Jr.

12                                    UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28